# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JIMMY LEE NELSON, | |
| *Petitioner*, | 3:06-cv-00129-LRH-VPC |
| vs. | ORDER |
| ATTORNEY GENERAL, *et al.*, | |
| *Respondents.* | |

This closed habeas matter under 28 U.S.C. § 2254 comes before the Court on a motion (#75) for evidentiary hearing by petitioner in proper person.

### *Background*

In 2000, petitioner Jimmy Lee Nelson was convicted in Nevada state court, pursuant to a jury verdict, of two counts of sexual assault and two counts of lewdness with a minor under fourteen years of age. Petitioner challenged the conviction on direct appeal and state post-conviction review, but his state petition was untimely. The remittitur concluding the appeal on the untimely state petition issued on June 14, 2005.

On or about March 7, 2006, Nelson mailed a federal petition to the Clerk for filing. The Court appointed the Federal Public Defender to represent petitioner. The Court thereafter dismissed the federal petition as untimely. The Ninth Circuit affirmed on appeal in No. 08-15829 in an October 28, 2009, memorandum opinion. The United States Supreme Court denied a petition for a writ of *certiorari* on March 29, 2010, in No. 09-8777 in that court.

Over two years later, on or about May 29, 2012, petitioner in proper person mailed, *inter alia*, a motion to reopen to the Clerk for filing.

Petitioner sought to reopen the federal habeas action on the basis that federal habeas counsel allegedly had provided ineffective assistance of counsel in failing to establish his alleged actual innocence in order to overcome the untimeliness of the federal petition.[1]   Petitioner asserted in particular in the motion, *inter alia*, that:

(1)     federal habeas counsel "[f]ailed to interview any witnesses, the alleged victims, Doctors involved, former counsel, the district attorney or any one involved in this case whatsoever;"

(2)     " . . . evidence was available to [federal habeas counsel] Debra A. Bookout which denied the fact of the crime, a medical report which was not allowed to be used in the defense of petitioner at his trial [and] [t]he State failed to make this report available to counsel for the defense Debra A. Bookout," constituting a *Brady* violation;

(3)     "Petitioner's [adult] daughter Brenda Nelson [the victims' mother] had made contact with Dr. Wicker of Las Vegas, NV[;] Dr. Wicker evaluated the two alleged victims . . . [and] stated [there was] no evidence of sexual abuse of either victim; and Ms. Debra A. Bookout failed to bring forth this evidence;" and

---

[1]At the time that this matter was dismissed on October 31, 2007, it remained an open question in the Ninth Circuit and Supreme Court as to whether a petitioner could overcome the federal time-bar on a showing of actual innocence.  *See, e.g., Majoy v. Roe*, 296 F.3d 770, 776-77 (9th Cir. 2002).  After this matter was concluded by the March 29, 2010, denial of *certiorari* by the Supreme Court, the Ninth Circuit ultimately held *en banc* on August 2, 2011, that the untimeliness of a federal petition could be overcome upon a showing of actual innocence.  *Lee v. Lampert*, 653 F.3d 929 (9th Cir. 2011)(*en banc*).  The Supreme Court reached the same conclusion on May 28, 2013, in *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013).  The issue was not before this Court in this matter prior to entry of final judgment herein, such that the issuance of the intervening authority – in and of itself – does not undercut the Court's basis for the dismissal of this action.  Petitioner's motion was grounded in federal habeas counsel not seeking to raise the issue and establish alleged actual innocence.

Petitioner asserts repeatedly in his papers that original federal habeas counsel "chose" only to pursue the time-bar issue.  Counsel of course did not choose a defense that *respondents* raised in their motion to dismiss.

(4)     federal habeas counsel informed petitioner in a telephone conversation that "she had an investigator who in fact was going to interview his daughter concerning the medical examination of the two alleged victims, and their recantations of any and all alleged sexual assault by petitioner . . . which would have led Counsel to discover a medical doctor whose findings would have proved Petitioner's innocence," but she did not pursue the investigation.

#56, at 1-5.

The Court allowed the Federal Public Defender to withdraw so that the Court could appoint substitute counsel to investigate and potentially pursue the issues raised on petitioner's motion to reopen. As an administrative matter, the Court denied the proper person motion without prejudice with the understanding that the May 29, 2012, mailing date of the proper person motion would be deemed the constructive filing date of a motion to reopen on substantially the same grounds filed by substitute federal habeas counsel after investigating the matter. #67.

On February 7, 2013, the Court appointed Ms. Mary Lou Wilson substitute federal habeas counsel. Ms. Wilson sought and was granted two extensions seeking more time to investigate and assess the matter.

On February 14, 2014, counsel filed a notice asserting that "[i]investigation has been completed in this case and at this time counsel will not be reopening the case." #74, at 1.

On or about March 21, 2014, petitioner mailed the present motion for filing. Petitioner asserted therein, *inter alia*, that substitute counsel obtained interviews only from the two victims and that this constituted "no investigation at all." Petitioner maintained that counsel should have investigated a number of matters, including: (a) alleged Fourth Amendment and *Miranda* violations; (b) allegedly repeated warrantless arrests; and (c) an "interview of the Dr. that examined both of the alleged victims" that petitioner's daughter, the victims' mother, "took both girls too." #75, at 1-2.

/ / / /

-3-

Nelson seeks an evidentiary hearing "to show cause why Attorney Wilson [has] failed to properly represent petitioner in this matter . . . and [conduct] a proper, quality investigation," an order discharging Ms. Wilson as counsel, and an order appointing petitioner what would be a third appointed federal habeas counsel and a second post-judgment counsel.

### *Discussion*

In the proceedings following petitioner's May 29, 2012, original proper person motion to reopen, the Court has made provisional *arguendo* assumptions that: (a) a showing that a petitioner was denied purported effective assistance of federal habeas counsel for failing to establish actual innocence to overcome the federal time-bar could demonstrate "any other reason that justifies relief" for purposes of post-judgment relief under Rule 60(b)(6); and (b) petitioner's post-judgment motion itself at least conceivably might be found to be timely under Rule 60(c)(1).[2]

At the end of the proverbial day, even with such *arguendo* assumptions, petitioner still would have to show that original federal habeas counsel failed to pursue a potentially viable claim of actual innocence under the applicable standard.

To overcome the untimeliness of a federal petition based upon actual innocence, a petitioner must pass through the narrow gateway in *Schlup v. Delo*, 513 U.S. 298 (1995). *See McQuiggin v.*

---

[2]The May 29, 2012, motion was untimely under Rule 60(c)(1) as to any request for relief under Rule 60(b)(1) through (3) because it was filed more than a year after the October 31, 2007, final judgment. There are no nonfrivolous available grounds for relief under Rule 60(b)(4) and (5) on the actual factual allegations presented.

It is subject to substantial question as to whether the motion – filed four and a half years after judgment – was made within a reasonable time under Rule 60(c)(1) as to a request for relief under Rule 60(b)(6). Petitioner relies upon alleged factual avenues of investigation regarding his alleged actual innocence that he maintains that he knew of and wanted original federal habeas counsel to pursue before judgment but she did not. It is subject to question whether petitioner's October 27, 2011, inquiry as to the content of original federal habeas counsel's files could not have been conducted successfully earlier through the exercise of reasonable diligence. Finally, Ninth Circuit law precluded successful reliance upon actual innocence to overcome a federal time bar only between the July 6, 2010, panel decision in *Lee v. Lampert* (see note 1, *supra*) and the February 8, 2011, order granting *en banc* rehearing and vacating the panel decision. The question otherwise was an open one in the Ninth Circuit continuously from the October 31, 2007, final judgment in this case through the August 2, 2011, *en banc* decision in *Lee v. Lampert*. Indeed, even during the seven-month span during which the contrary panel decision in *Lee v. Lampert* instead held sway, proceedings had not yet concluded in that case and the issue also remained open in the Supreme Court.

It thus is subject to substantial question whether the original proper person post-judgment motion was timely. However, as discussed *infra* in the text, if petitioner cannot present a potentially viable claim of actual innocence, the Court has no occasion to consider the *arguendo* assumptions noted in the text further.

*Perkins*, 133 S.Ct. 1924 (2013); *Lee v. Lampert*, 653 F.3d 929 (9th Cir. 2011)(*en banc*).  To satisfy the narrow *Schlup* standard, a petitioner must come forward with new reliable evidence that was not presented at the trial that, together with the evidence adduced at trial, demonstrates that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 329.  The evidence need not be newly discovered, but it must be "newly presented." *See Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003).  In this regard, "actual innocence" means actual factual innocence, not mere legal insufficiency.  *See, e.g., Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).  The reviewing court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial," and it "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 332.

The state court record materials on file reflect, *inter alia*, the following.[3]

Nelson was charged by criminal complaint on February 26, 1997, with having committed the following offenses in Nye County, Nevada: (a) sexual assault of the then nine year old R.S. between June 1, 1993, and September 30, 1993, by putting his finger in her vagina; (b) sexual assault of the then eight year old A.S. between December 1, 1993, and December 30, 1993, by putting his finger in her vagina; (c) lewdness with a minor under 14 years committed on R.S. between June 1, 1993, and September 1, 1993, by touching her breasts and kissing her on the lips; and (d) lewdness with a minor under 14 years committed committed on A.S. between December 1, 1993, and December 31, 1993, by touching her buttocks.[4]

The State's evidence at trial tended to establish, *inter alia*, the following.  R.S. and A.S., Nelson's granddaughters, reported the 1993 offenses to their step-grandmother (who was divorced from Nelson) in November, 1996, while in New Jersey.  She contacted law enforcement in New Jersey at that

---

[3]While summarizing relevant record materials, the Court makes no finding of fact or credibility determination. It merely summarizes the content of certain record materials in determining whether petitioner has identified an avenue of investigation of actual innocence that potentially would satisfy the narrow *Schlup* gateway that now two federal habeas attorneys allegedly have failed to pursue through ineffective assistance.

[4]#20, Ex. 2.

1   time.  At trial, neither R.S. nor A.S. testified to any physical penetration by Nelson other than digital

2   penetration in each young girl's vagina in 1993.[5]  The licensed therapist who conducted numerous

3   counseling sessions with the children in New Jersey after they reported the incidents found that their

4   therapeutic presentation was consistent with sexual abuse.[6]  The State further presented other crimes

5   evidence, following a hearing on admissibility, including the testimony of another women, the daughter

6   of the victims' step-grandmother, that Nelson had sexually molested while she was a young girl.[7]

7       Against the backdrop of the trial evidence, petitioner has failed to identify an avenue of

8   investigation of actual innocence that potentially would satisfy the narrow *Schlup* gateway that original

9   and substitute federal habeas counsel allegedly failed to pursue through ineffective assistance.

10      Nelson's bare, self-serving suggestion to this Court on May 29, 2012, that the victims had

11  recanted stands belied.  Conflict-free substitute federal habeas counsel investigated that matter.  There

12  are no such recantations.  Nor does petitioner continue to assert that there are such recantations.

13      Rather, petitioner contends that substitute counsel failed to investigate other issues that

14  purportedly needed to be investigated.  Yet, against the backdrop of the actual trial evidence, none of

15  the potential avenues of investigation that he identifies, which similarly are supported only by his own

16  bare self-serving assertions, reasonably could lead to the discovery of evidence of actual innocence

17  satisfying the narrow *Schlup* gateway.

18      Clearly, investigation regarding alleged Fourth Amendment, *Miranda*, and warrantless arrest

19  violations would not establish actual factual innocence under *Schlup*.[8]

20  _____

21      [5]#22, Ex. 13, at 58-61 & 63-73 (Barbara Ann Bell, the step-grandmother); *id.*, at 74-87 (A.S.); *id.*, at 87-106
    (R.S.); *id.*, at 109-19 (Brenda Sue Nelson, the mother); #23, Ex. 13, at 156-62 (Detective Peter Yagiello).
22

23      [6]#23, Ex. 13, at 144-54 (therapist Geraldine Kerr).  Any error as to the testimony does not bear on innocence.
    *See also Nelson v. State*, No. 43865, at 2 (Nev. May 19, 2005)(questioning the prior holding of error on direct appeal).

24      [7]#22, Ex. 13, at 127-35.  Any error as to the admission of a second other-crime victim's testimony also does not
25  bear on innocence.  See *id.*, at 120-27.

26      [8]Alleged Fourth Amendment and warrantless arrest violations generally would not even be cognizable even in a
    timely federal petition.  *See Stone v. Powell*, 428 U.S. 465 (1976).  The salient point, however, is that investigating and
27  demonstrating such alleged violations would not demonstrate actual factual innocence under *Schlup*.  The mere
    incantation of the words "actual innocence" does not lead to merits issues being considered without regard to other
28                                                                                                (continued...)

1    Nor can investigation of an alleged examination by a Dr. Wicker in Las Vegas develop evidence

2 that, together with the evidence adduced at trial, would demonstrate that it is more likely than not that

3 no reasonable juror would have found the petitioner guilty beyond a reasonable doubt.

4    Any alleged physical examination by a Dr. Wicker could not establish actual innocence on the

5 facts presented.  The victims reported the Pahrump, Nevada offenses in New Jersey over three years

6 after they occurred.  Even if a physician conducted a physical sexual assault examination *the day of* an

7 alleged digital penetration, the absence of positive findings in such an examination would not render

8 it more likely than not that no reasonable juror would convict.[9]  Sexual assault convictions frequently

9 are obtained and upheld in the absence of such positive findings, including in cases involving more than

10 only digital penetration.  *A fortiori*, the absence of positive findings instead years after the offenses of

11 course clearly could not rule out digital penetration in 1993.  Nor could the absence of positive findings

12 in a physical examination rule out the possibility of a conviction for lewdness based upon kissing a

13 child's lips or touching their breasts or buttocks.

14    Any alleged mental or psychological examination by a Dr. Wicker – assuming that such was

15 within the provider's normal area of expertise – similarly would not establish, together with the

16 evidence adduced at trial, that it is more likely than not that no reasonable juror would have found

17 Nelson guilty beyond a reasonable doubt.  Jurors then would have been presented with contrasting

18 opinions by two providers and the testimony of the victims.  The fact that one provider was a doctor of

19 some type would not require that jurors accept one opinion over the other.[10]

20 _____

21    [8](...continued)

22 procedural issues.  Petitioner first must pass through the *Schlup* gateway, which he cannot do as discussed in the text.

23    [9]Thus, the Court would reach the same conclusion even if *arguendo* a Dr. Wicker conducted an examination closer to the offenses in 1993.  Testimony by the mother suggests that the victims said to her in 1993 that "something

24 had happened" but then denied that Nelson had done anything other than rub lotion on them. #22, Ex. 13, at 111-12 & 115-17 (Brenda Nelson).  If the mother *arguendo* took the children to see a Dr. Wicker at that time, an alleged negative

25 examination would not have been conclusive of guilt or innocence.

26    [10]The Court has indulged every abstractly theoretical possibility in its discussion in the text.  In his testimony at trial, Nelson referred to "when Doctor Wicker sent the kids to New Jersey" after the police caught their mother with

27 drugs. #23, Ex. 13, at 182.  This reference was to events in 1996, again three years after the offenses.  The obituary records for the Las Vegas Review-Journal reflect that a Dr. Donald Wicker, M.D., passed away on November 11, 2011,

28                                                                    (continued...)

1    The same observations apply to any other *arguendo* additional medical or psychological

2    evidence possibly referenced in petitioner's bare, vague self-serving references to "Doctors involved,"

3    to a medical report that the defense allegedly was not allowed to use and that was withheld by the State

4    from original habeas counsel allegedly in violation of *Brady*,[11] and to the prospect that an interview of

5    the mother would lead to discovery of a medical examination that would establish actual innocence.

6    If petitioner is referring in such bare self-serving assertions to medical evidence over and above an

7    examination by a Dr. Wicker, such evidence cannot establish that it is more likely than not that no juror

8    would find petitioner guilty beyond a reasonable doubt.  Against the backdrop of the evidence presented

9    at trial, with the 1993 offenses being reported in 1996, neither a physical examination nor a mental or

10   psychological examination result would satisfy the narrow *Schlup* gateway.  Petitioner must do more

11   than present *arguendo* favorable evidence not presented at trial.  He instead must present evidence that,

12   together with the evidence adduced at trial, demonstrates that it is more likely than not that no

13   reasonable juror would have found the petitioner guilty beyond a reasonable doubt.  Physical or mental

14   evaluations, especially years after the fact, would not satisfy this demanding standard – indulging an

15   *arguendo* assumption that petitioner's self-serving references to exculpatory medical evidence are any

16   more reliable than his belied allegation that the victims recanted.

17          Petitioner suggests that original and substitute counsel further must "interview any witnesses

18   . . . former counsel, the district attorney or any one involved in this case" in an effort to establish actual

19   innocence.  The victims have not recanted.  The alleged medical evidence referenced by petitioner, even

20   if an assumption is made that it actually exists, would not satisfy the narrow *Schlup* gateway against the

21   backdrop of the trial evidence.  Federal habeas counsel – whether original or substituted – clearly was

22   not required to then conduct what would be not only a fishing expedition but in truth a goose chase

---

24          [10](...continued)
25   at the age of 79.  The 2009 local yellow pages listed the late Dr. Wicker as having a family and general practice.  If petitioner is referring to the same individual, it would appear that he no longer is available to be interviewed by counsel.  See:  http://obits.reviewjournal.com/obituaries/lvrj/obituary.aspx?pid=154665699

26
27          [11]The ruling of *Brady v. Maryland*, 373 U.S. 83 (1963), does not extend to the post-conviction context.  *See District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52 (2009).  Petitioner apparently suggests that original federal habeas counsel was ineffective for failing to discover what the State purportedly withheld from her in some fashion.  The Court in truth has been presented with bare formulaic allegations, not actual factual allegations.

28

1  asking, *e.g.*, the district attorney, if there is any evidence of actual innocence.  An order to engage in

2  such folly, years after final judgment, clearly is not warranted.

3        The Court therefore will deny the principal relief sought on the present motion, the appointment

4  of a new attorney to further pursue petitioner's bare, vague and self-serving assertions of actual

5  innocence.  Petitioner must present more than his own self-serving assertions – which in their most

6  principal part have been belied as to the nonexistent recantations – after two federal habeas attorneys

7  have independently reviewed the matter and declined to pursue a claim of alleged actual innocence to

8  overcome the untimeliness of the federal petition.

9        The Court will grant the request to terminate substitute counsel's representation, but without

10 appointment thereafter of further replacement counsel.  Current counsel has fully discharged her

11 obligations in the matter, and no competent counsel would pursue the matter further based on the record

12 and the self-serving assertions presented.  Merely because counsel has not done everything that

13 petitioner wants her to do does not signify that she has a "conflict of interest."  The Court will terminate

14 the current representation so that petitioner may pursue any relief sought hereafter in proper person

15 without a question as to whether he instead should be required to proceed through counsel of record.

16       The Court further will deny all principal relief sought in proper person from May 29, 2012, on,

17 other than the provisional relief provided previously of appointing conflict-free substitute counsel to

18 investigate the matter.  That is, the Court is denying the underlying request to reopen the matter

19 presented on May 29, 2012.  This order thus constitutes the Court's final word on the proper person

20 relief sought herein in proper person on and after May 29, 2012.  This order therefore postures all issues

21 raised, including the request to reopen, for appellate review on a timely appeal from this order.

22       IT THEREFORE IS ORDERED that petitioner's proper person motion (#75) for evidentiary

23 hearing is GRANTED IN PART and DENIED IN PART, such that the Court GRANTS petitioner's

24 request to terminate current counsel's representation but DENIES all other requests for relief therein,

25 including the requests for an evidentiary hearing and for appointment of replacement counsel.

26       IT FURTHER IS ORDERED that the appointment of Mary Lou Wilson, Esq., as petitioner's

27 counsel is TERMINATED, following upon counsel having fully satisfied her professional obligations

28 herein.  Petitioner is proceeding in proper person hereafter following upon this order.

-9-

1        IT FURTHER IS ORDERED that the Court denies all other requests for relief asserted herein

2   by petitioner in proper person seeking to reopen the matter, with this order constituting a conclusive and

3   final denial of relief under Rule 60(b) with regard to the October 31, 2007, final judgment.

4        IT FURTHER IS ORDERED that a certificate of appealability, to the extent required in this

5   procedural context, is DENIED.  Jurists of reason would not find the Court's rejection of Rule 60(b)

6   and other post-judgment relief in this action to be debatable or wrong.  The Court appointed conflict-

7   free substitute counsel to investigate petitioner's allegations that the Federal Public Defender provided

8   ineffective assistance of counsel in failing to establish his alleged actual innocence in order to overcome

9   the untimeliness of the federal petition.  Such investigation belied petitioner's bare, self-serving

10  allegation that the child sexual abuse victims had recanted.  For the reasons discussed herein,

11  petitioner's remaining bare and self-serving allegations do not establish that not just one but now two

12  federal habeas counsel have failed to pursue a potentially viable claim of actual innocence under the

13  narrow *Schlup* actual innocence gateway.

14       The Clerk shall assure that both Ms. Wilson and the petitioner in proper person receive a copy

15  of this order and shall reflect the transmittal to both individuals separately in the docket entry for this

16  order.

17       DATED this 2nd day of June, 2014.

18

19

20  _____
    LARRY R. HICKS
21  UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28